UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GREEN-AJUFO,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES (CENTER FOR DISEASE CONTROL AND PREVENTION), et al.,<br><br>Defendants. | Case No. 17-cv-05640-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

## INTRODUCTION

Defendant Alex M. Azar II, Secretary of the U.S. Department of Health and Human Services ("HHS"), filed a Motion to Dismiss the Complaint.[1] Mot., Dkt. No. 10. Plaintiff Barbara Green-Ajufo filed an Opposition (Dkt. No. 13) and the Secretary filed a Reply (Dkt. No. 16). The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 1, 2018 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendant's Motion for the following reasons.

---

[1] Plaintiff named as defendant former HHS Secretary Thomas E. Price. Mot. at 12. When Secretary Price resigned from HHS on September 29, 2017, Acting HHS Secretary Eric D. Hargan was automatically substituted as the proper defendant. Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see* Mot. at 12. Azar was sworn in as Secretary on January 29, 2018 and thus replaces Hargan as Defendant in this action. *Id.*; *see* Reply at 1 n.1.

**BACKGROUND**

**A.     Factual Background[2]**

Plaintiff received a Doctorate of Public Health, Epidemiology, and a Master of Public Health from the University of California, Berkeley.  Compl. ¶ 12, Dkt. No. 1.  From 1995 to 1997, she worked as an Epidemic Intelligence Officer with HHS.  *Id.*  From 2001 to 2011, Plaintiff served the County of Alameda as the Director of the HIV/AIDS Epidemiology and Surveillance Program.  *Id.*  Plaintiff is an African-American female.  *Id.* ¶ 15.

On March 13, 2011, Plaintiff was hired by an unspecified Defendant as an Epidemiologist.  *Id.* ¶¶ 11, 16.  Plaintiff "was selected . . . based on her qualifications for the position."  *Id.* ¶ 14.  Plaintiff was assigned to a position in Malawi; however, she worked in Oakland, California while she obtained medical and security clearances.  *Id.* ¶ 16.

In March 2011, Plaintiff met her supervisor, Dr. Sundeep Gupta, during her orientation in Atlanta, Georgia.  *Id.* ¶¶ 5, 17.  "Upon the initial meeting, Dr. Gupta demonstrated a bias against, and an inexplicable lack of acceptance of [Plaintiff], by his demeanor[,] which was a gesture of shock when . . . Dr. Gupta first saw Plaintiff."  *Id.* ¶ 17.

Plaintiff was not assigned to work in Malawi until July 27, 2011, the date she arrived at the Malawi duty station.  *Id.* ¶ 18.  At some point before she arrived in Malawi, Plaintiff submitted her individual development plan ("IDP") to Dr. Gupta; he did not respond to or sign the IDP.  *Id.* ¶ 19.  Between March 2011 and July 27, 2011, Dr. Gupta's only interactions with Plaintiff consisted of sending her documents about current work in Malawi.  *Id.*  Dr. Gupta did not give Plaintiff any assignments or have substantive discussions with her during that time.  *Id.* ¶ 20.

Dr. Gupta did not interact with Plaintiff between August 1, 2011 and August 15 or 16, 2011.[3]  *Id.* ¶ 21.  Although Dr. Gupta would pass Plaintiff's office and glance in without any interaction, Plaintiff saw Dr. Gupta interact with Plaintiff's Caucasian female colleges, whose offices were near Plaintiff's.  *Id.*  In addition, Dr. Gupta did not give Plaintiff any feedback about

---

[2] For purposes of this Motion, the following factual allegations are taken as true.

[3] It appears Dr. Gupta was in Malawi with Plaintiff.  *See* Mot. at 4, 7.

2

her performance and did not provide Plaintiff with a performance progress report in violation of the Performance Management Appraisal Program, which required Dr. Gupta to provide Plaintiff with such a report during the calendar year. *Id.* ¶¶ 33-36.

On December 9, 2011, Dr. Gupta notified Plaintiff that he intended to seek her termination. *Id.* ¶ 22. Dr. Gupta stated "he did not think [Plaintiff] could 'get it'" which Plaintiff alleges evidences his racial and national origin bias against her. *Id.* ¶ 30. Dr. Gupta made this discriminatory, stereotypical comment because Plaintiff is an African-American female. *Id.* ¶ 31. There was no "factually supportable reason" for this comment, given that Plaintiff "is particularly qualified for the position based on her education and experience." *Id.*

"But for Dr. Gupta's discriminatory perception of [Plaintiff] from the initial meeting in March 2011, there was no fact based, non-discriminatory reason to recommend termination[.]" *Id.* ¶ 20. The Center for Disease Control terminated Plaintiff on February 15, 2012. *Id.* ¶ 23.

**B.     Procedural Background**

On June 22, 2012, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging claims of "Racial or Color Discrimination (includes harassment) and National Origin Discrimination." *Id.* ¶ 25. The EEOC issued a right-to-sue letter on June 29, 2017. *Id.* ¶ 26 & Attachment 1 (Right-to-Sue Letter).

Plaintiff initiated this action on September 29, 2017. *See* Compl. She names as Defendants HHS's Center for Disease Control and Prevention; the Secretary of HHS; Brenda Fitzgerald, Director of the Center for Disease Control and Prevention; and Dr. Gupta. *Id.* ¶¶ 3-5. Plaintiff asserts two claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.: (1) Discrimination – Race, Color, and National Origin; and (2) Harassment/Hostile Work Environment Created by Dr. Gupta. *Id.* ¶¶ 27-71.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue. Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to

3

dismiss for improper venue, a court may consider facts outside of the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *see Petersen v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013) ("The non-moving party's pleadings need not be accepted as true, . . . and we may consider facts outside the pleadings."). If the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. 28 U.S.C. § 1406(a). Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

## DISCUSSION

### A.     Rule 12(b)(3)

The Secretary moves to dismiss for improper venue or, in the alternative, to transfer this case to the Northern District of Georgia. Title VII allows an action to "be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e-5(f)(3). "[I]f the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." *Id.* Title VII's broad venue provision only "seeks to limit venue to the judicial district concerned with the alleged discrimination." *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 504 (9th Cir. 2000) (internal quotation marks omitted).

Plaintiff argues venue is proper in the Northern District of California because she worked in Oakland, California from March 13, 2011 to July 26, 2011. Opp'n ¶ 4; *see* Green-Ajufo Decl. at ECF p.4 (Feb. 14, 2011 letter from Atlanta Human Resources Center stating "[w]hile awaiting for approvals and completion of all clearances, immunizations, etc., you will be **temporarily located in Oakland, CA.**" (emphasis in original)). Plaintiff contends "[a]n 'unlawful *employment* practice' . . . necessarily occurs where the plaintiff is *actually employed* and feels the impact of discriminatory terms or conditions of employment on a day-to-day basis." Opp'n ¶ 10 (emphasis

4

in original).[4] But the Complaint does not allege discriminatory conduct occurred while Plaintiff worked in Oakland. Plaintiff's claims are based on events that occurred elsewhere: Dr. Gupta's biased reaction toward Plaintiff upon meeting her during her orientation in Atlanta; Dr. Gupta's conduct toward Plaintiff in Malawi; Dr. Gupta's failure to provide Plaintiff with a performance progress review while she was in Malawi; and Plaintiff's termination on February 15, 2012 while she was working in Malawi.

Jennifer Parker was the Deputy Director for Management and Overseas Operations for the CDC's Center for Global Health between March 2011 and February 2012. Parker Decl. ¶ 1, Dkt. No. 10-1. Ms. Parker declares "[t]he decision to terminate plaintiff was made by Allison Tanner, a CDC Executive Officer" who "was located in Atlanta, Georgia, when she acted on [Dr. Gupta's] request and recommendation to terminate [Plaintiff]." *Id.* ¶ 6. On January 13, 2012, Deborah Birx, Director of the Division of Global HIV and AIDS, formally recommended terminating Plaintiff's employment. *Id.* ¶ 7. On February 9, 2012, Kevin DeCock, Director of the Center for Global Health, agreed with Dr. Birx's recommendation. *Id.* ¶ 8. Drs. Birx and DeCock were located in Atlanta when they made or concurred with the recommendation. *Id.* ¶¶ 7-8. In addition, Plaintiff's "employment records . . . are located, maintained, and administered in Atlanta, Georgia. Other pertinent records are located in Malawi." *Id.* ¶ 9.

Based on the foregoing allegations and declaration, venue is proper in the Northern District of Georgia where the decision to terminate Plaintiff's employment took place and where Plaintiff's employment records are located. Even if Plaintiff spent half of her employment in Oakland (*see* Green-Ajufo Decl. ¶¶ 9-10), she does not allege she suffered discrimination in Oakland. By allowing actions to proceed where the "unlawful employment practice is alleged to have been committed," Title VII focuses on where the discrimination took place, not just where a complainant worked during her period of employment.

Plaintiff argues "Title VII . . . does provide for venue at the employer's principal office,

---

[4] In support of her arguments, Plaintiff relies on a brief filed by the appellee in *Passantino*. *See* Opp'n ¶¶ 10-13. While the Ninth Circuit's opinion in *Passantino* is binding precedent, the appellee's brief is not.

5

but only as a default rule if the employer is not 'found' in any of the other districts where venue is permitted." Opp'n ¶ 11. She contends that "[b]y including that default clause, Congress necessarily indicated that the other clauses could . . . result in venue in a district where the employer does *not* have its principal office." *Id.* Assuming, arguendo, this is true, this does not provide a basis for Plaintiff to maintain her action in the Northern District of California. As discussed above, the Northern District of Georgia is an appropriate venue for this case because this is where the allegedly discriminatory actions took place and where Plaintiff's records are located – not simply because it is where the CDC has its headquarters.

Although Title VII allows a plaintiff to bring an action "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice," 42 U.S.C. § 2000e-5(f)(3), Plaintiff does not allege that discriminatory practices prevented her from working in Oakland. On the contrary, Plaintiff alleges she worked in Oakland while she waited for the appropriate medical and security clearances. Compl. ¶ 16; *see* Green-Ajufo Decl. ¶ 5 & ECF p.4. The Northern District of California is therefore not a proper venue under this provision.

## B. Improper Defendants

In a civil action brought under Title VII, "the head of the department, agency, or unit . . . shall be the defendant." 42 U.S.C. § 2000e-16(c). The only proper Defendant this action is the Secretary, and Plaintiff concedes the other named Defendants should be dismissed. Opp'n at 9-10.

## CONCLUSION

For the foregoing reasons, the Court **DISMISSES** HHS, Dr. Fitzgerald, and Dr. Gupta; **GRANTS** the Rule 12(b)(3) Motion; and **ORDERS** this case be transferred to the Northern District of Georgia. In light of the transfer, the Court does not consider whether Plaintiff's hostile work environment claim should be dismissed pursuant to Rule 12(b)(6). Nothing in this Order precludes the Secretary from raising this issue before the transferee court.

**IT IS SO ORDERED.**

Dated: February 22, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge